UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ANHUI JOYFUL MANUFACTURING &
TRADING CO., LTD. and ANHUI IMPORT
AND EXPORT CO., LTD.,

                     Plaintiffs,                     23-cv-8070 (PKC)

       -against-                        OPINION AND ORDER

M.I.S.S. SPORTSWEAR, INC. and THE MISS
GROUP,

                     Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

             Plaintiffs Anhui Joyful Manufacturing & Trading Co., Ltd. and Anhui Import and Export Co., Ltd. (collectively, "Anhui") are China-based manufacturers and exporters of garments.  Defendants M.I.S.S. Sportswear Inc. and the Miss Group (collectively, "MISS") purchase and manufacture garments and sell them to national retail chains.  Between May 2022 and March 2023, MISS placed a total of 247 garment orders with Anhui, with each transaction made through a purchase order.

             In June 2023, Anhui and MISS exchanged communications about MISS's unpaid invoices.  A MISS executive agreed to a payment schedule, but shortly thereafter, MISS reported that Anhui's shipments contained defective products, including incorrectly sized garments, items where dyed colors were "bleeding" and items with defects in their texture.  MISS conducted only a limited inspection of the contents of Anhui's shipments because sample garments conformed to design specifications and because Anhui had good work history.  MISS states that it became aware of the manufacturing defects when retail outlets stopped placing new orders, prompting MISS to investigate their reasons.  MISS halted payments to Anhui in August 2023.

Anhui brings claims for breach of contract, account stated, and goods sold and delivered. For each claim, Anhui Joyful seeks $701,670.20 and Anhui Import seeks $1,706,760.18. Discovery is closed, and Anhui moves for summary judgment in its favor.

The summary judgment record reflects that MISS accepted delivery of Anhui's goods, had a reasonable opportunity to inspect the goods, and did not seasonably reject them. MISS accepted the goods as a matter of law when it re-sold them to retailers. In opposition, MISS has not come forward with facts that would permit a reasonable trier of fact to find in its favor on Anhui's claim for breach of contract. Anhui's summary judgment motion will therefore be granted on its breach of contract claim. Its claims for account stated and goods sold and delivered are duplicative of the breach of contract claim and will be dismissed.

BACKGROUND.

Anhui Joyful and Anhui Import are Chinese corporations with their principal places of business in China. (Pl. 56.1 ¶¶ 1-2; Def. 56.1 Resp. ¶¶ 1-2; Lee Dec. ¶¶ 3-4 (ECF 23-6).)[1] Both companies manufacture and export garments, and are owned by Leon Lee. (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3; Lee Dec. ¶ 1.)

MISS is a United States-based importer and wholesaler of apparel for women and girls. (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.) MISS sells its inventory to national retail chains, including Marshall's, TJ Max, Ashley Stewart and Burlington Coat Factory. (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1; Steiner Dec. ¶ 3 (ECF 26).)

---

[1] Local Civil Rule 56.1(d) requires that "[e]ach statement by the movant or opponent . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Certain paragraphs in Anhui's Rule 56.1 Statement do not cite supporting evidence, including several paragraphs that MISS does not dispute. The Court has identified supporting evidence in Anhui's submissions and cites it herein. Citation to a party's Rule 56.1 Statement is otherwise intended as a citation to the evidence cited in the Rule 56.1 Statement. Citation to such evidence is for illustrative purposes and not intended to imply that it is the only evidence in the record to support the factual statement.

Between May 2022 and March 2023, MISS submitted to Anhui 247 purchase orders for garments.  (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7; Lee Dec. ¶ 7; ECF 23-7 to 23-11 (purchase orders).)  MISS placed 149 orders with Anhui Joyful and 98 orders with Anhui Imports.  (Pl. 56.1 ¶¶ 8-9; Def. 56.1 Resp. ¶¶ 8-9; Lee Dec. ¶¶ 10-11; ECF 23-7 to 23-11.)  Each purchase order specified the garments' quantities, sizes and prices, among other things.  (Pl. 56.1 ¶ 6; Def. 56.1 Resp. ¶ 6; Lee Dec. ¶ 9; ECF 23-7 to 23-11.)

Under the heading "Payment Terms," the purchase orders to Anhui Joyful varied somewhat, including "Letter of Credit," "DDP NJ WHSE," "To Be Advise," "ROG" [i.e., Receipt of Goods] 14 or 15 days, "Net 30 ROG" and "Net 15 Days."  (ECF 23-7 to 23-9.)  It appears that most of MISS's initial orders to Anhui Joyful were to be paid by letters of credit, but beginning in or around November 2022, the parties agreed that MISS would make direct payment within fixed 15- or 30-day deadlines.  (ECF 23-7 to 23-9.)  As to Anhui Imports, it appears that each purchase order listed payment terms of "Net 30 ROG" or "Net 21 Days," except for eight that provided for payment by letters of credit.  (ECF 23-10, -11.)  Anhui sent sixteen shipments to MISS between September 19, 2022 and July 3, 2023.  (Lee Dec. ¶ 12 & ECF 23-12.)

Before final shipment of an order, Anhui sent MISS a "pre-production" sample that MISS would approve if it met specifications, and after production, Anhui sent MISS a "top of production" sample intended to match the pre-production sample.  (Def. 56.1 ¶¶ 6-7; Pl. 56.1 Resp. ¶¶ 6-7.)  As described by Mendel Steiner, the head of production at MISS: "The product itself is closed because it is prepackaged per the specifications of MISS or the retailer; nonetheless, it was inspected to verify quantity, colors and style.  On their surface, all of Anhui's shipments appeared to conform."  (Steiner Dec. ¶ 21.)

The items that became subject to dispute were re-orders of garments identical to ones that MISS purchased from Anhui in early 2022. (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.) They consisted of rayon or spandex dresses, polyester tops and T-shirts, and rayon or spandex tops. (Def. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10.)

Anhui states that it "duly fulfilled" each order. (Pl. 56.1 ¶ 10; Lee Dec. ¶ 12.) In response, MISS asserts that it received items that were incorrectly sized and styled, poorly dyed and had defective textures. (Def. 56.1 Resp. ¶ 10 & Steiner Dec. ¶¶ 28-54 (ECF 26).) MISS contends that certain rayon or spandex dresses manufactured by Anhui had defective lengths, defective straps or were missing pockets. (Def. 56.1 ¶¶ 13-19.) It contends that certain polyester T-shirts had stains and color bleeding and that the neck label of a different T-shirt style was heat-sealed onto the product itself. (Def. 56.1 ¶ 29, 30.)

The parties' relationship began to break down in late June 2022. On June 23, 2023, Anhui sent MISS an email that stated in part: "We have total 2.6-2.7 million dollars unpaid invoices that you still owe us so far." (Pl. 56.1 ¶ 19; Def. 56.1 Resp. ¶ 19; Lee Dec. ¶ 19; ECF 22-15.) Anhui noted that MISS had stopped making weekly payments. (ECF 23-15.) MISS asserted that retail business in the United States had recently "been terrible" and was causing a delay in payment. (ECF 23-15.) MISS stated: "We agree to send you weekly wires until we pay you off your balances over the next few months." (ECF 23-15.) After this exchange of emails, MISS made payments to Anhui on July 6, July 12, July 20, July 24 and August 1, 2023, with those payments totaling $80,000. (ECF 23-5.)

MISS first raised complaints about the condition of Anhui's shipments sometime in late June 2023. Anhui admits that the parties exchanged text messages about manufacturing defects in June 2023. (Def. 56.1 ¶¶ 21-22; Pl. 56.1 Resp. ¶¶ 21-22.) A June 28, 2023 email from

Mendel Steiner to Lee identified measurement defects in certain items and invited Lee to inspect the products personally. (ECF 26-10.) In that email, Steiner wrote that he was sharing the information as a "heads up" and did not state that he was returning any shipment. (Id.) The parties agree that Lee attended three in-person meetings at MISS offices, though they dispute whether the meetings centered on production defects or arranging for MISS's payments to Anhui. (Def. 56.1 ¶¶ 23-25; Pl. 56.1 Resp. ¶¶ 23-25.) At Lee's request, MISS sent a carton of each garment style back to Anhui's facilities in China. (Def. 56.1 ¶ 26; Pl. 56.1 Resp. ¶ 26.)

On July 13, 2023, Steiner emailed Anhui stating that MISS had received defective garments, attached purchase order numbers, and described the defects. (Pl. 56.1 ¶ 22; Def. 56.1 Resp. ¶ 22; Lee Dec. ¶ 22; ECF 23-16.) Anhui states that only one of those defective shipments originated with Anhui. (Pl. 56.1 ¶ 23.) MISS asserts that the list was not intended to be comprehensive and instead provided examples of the defects. (Def. 56.1 Resp. ¶ 23.)

MISS states that it only learned that the garments contained defects when it began to "investigate[ ]" why retailers were not placing new orders. According to Steiner, April and May are the strongest retail months for dresses sold at Marshals and T.J. Maxx, and "ordinarily there would have been constant reordering throughout the season." (Steiner Dec. ¶ 25.) MISS "noticed" that the retailers "had not reordered the product . . . ." (Steiner Dec. ¶ 25.) Steiner states: "Concerned, MISS investigated the matter and discovered, unbeknownst until then to MISS, that the product had been defective, i.e. not to the specifications of the subject purchase orders and were actually not the same as the 'pre-production' and 'top of production' samples that had been sent." (Steiner Dec. ¶ 25.)

Steiner states that MISS did not discover the defects upon shipment because the pre-production and top-of-production samples conformed to expectation and Anhui had "a good

track record" in previous shipments.  (Steiner Dec. ¶ 27.)  "Thus, the defects were only discovered on these items after MISS investigated its lack of sales of dresses."  (Steiner Dec. ¶ 27.)  Steiner separately identifies a complaint from a retail customer that identified "puckering" on the texture of an Anhui-made shirt delivered by MISS, and states that the retailer charged MISS $30,000 for the defective goods.  (Steiner Dec. ¶¶ 50-53.)

It is undisputed that MISS continued to make regular payments to Anhui even as it complained of manufacturing defects.  (Pl. 56.1 ¶ 21; Def. 56.1 Resp. ¶ 21; ECF 23-5.)  Between August 11, 2022 and August 16, 2023, Anhui sent seventeen invoices to MISS, although eight of those invoices are dated August 16, 2023, which was after MISS's last payment on August 1.  (Pl. 56.1 ¶¶ 11-12; Def. 56.1 Resp. ¶¶ 11-12; ECF 23-13, -14.)  In total, MISS has paid $112,452.40 to Anhui Joyful and $332,035.68 to Anhui Imports.  (Pl. 56.1 ¶ 14; Def. 56.1 Resp. ¶ 14.)

As noted, Anhui Joyful and Anhui Imports bring claims for breach of contract, account stated, and goods sold and delivered.  (Compl't ¶¶ 18-65.)  MISS has asserted a counterclaim for breach of contract.  (Counterclaim ¶¶ 1-12 (ECF 14).)  MISS seeks damages of at least $75,000 but as much as $5 million as a result of customer deductions, chargebacks and markdowns, as well as lost profits and sales, and overhead expenses.  (Id.)  No party moves for summary judgment on MISS's counterclaim.  Anhui notes: "Defendants have not moved for summary judgment on their counterclaim. Whether the Goods were defective and whether Defendants may seek damages are not at issue on this motion."  (Reply Mem. at 10 n.3.)  SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A genuine factual dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Truitt v. Salisbury Bank & Tr. Co., 52 F.4th 80, 85 (2d Cir. 2022) (quoting Anderson, 477 U.S. at 248).  On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant."  Delaney v. Bank of America Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'"  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

DISCUSSION.

I.      NEW YORK LAW GOVERNS THE PARTIES' DISPUTE.

MISS urges that Anhui's claims are governed by the United Nations Convention on Contracts for the International Sale of Goods, 19 I.L.M. 668 (1980) (the "CISG"), while Anhui maintains that its claims are governed by New York law.  The parties' purchase orders contain no choice-of-law provision.  As will be explained, the Court concludes that New York law governs the dispute because MISS waived reliance on the CISG and consented to the application of New York law.  See generally Rienzi & Sons, Inc. v. Puglisi, 638 Fed. App'x 87, 90 (2d Cir. 2016) (summary order).

The CISG is a self-executing treaty that "governs sales contracts between parties from different signatory countries unless the parties clearly indicate an intent to be bound by an alternative source of law."  Transmar Commodity Grp. Ltd. v. Cooperativa Agraria Indus. Naranjillo Ltda., 721 Fed. App'x 88, 89 (2d Cir. 2018) (summary order) (quotation marks omitted).  "New York law differs from the CISG in several important respects," including the CISG's requirement to give "due consideration" to extrinsic evidence of the parties' expectations and a "strong preference" for enforcing industry customs based on extrinsic evidence.  Id.  The CISG "contains no parol evidence rule . . . ."  Weihai Textile Grp. Imp. & Exp. Co. v. Level 8 Apparel, LLC, 2014 WL 1494327, at *6 (S.D.N.Y. Mar. 28, 2014) (Carter, J.) (quotation marks omitted).

Anhui filed its Complaint on September 12, 2023.  (ECF 1.)  As noted, it brought claims for breach of contract, account stated, and goods sold and delivered.  (See id.)  The Complaint did not cite the CISG.  (See id.)

MISS filed its Answer, Affirmative Defenses and Counterclaims on November 1, 2023.  (ECF 14.)  It did not invoke the CISG.  (See id.)  MISS's Tenth Affirmative Defense states "that the Complaint includes references to alleged agreements made outside of the alleged written contract, violating the Parole Evidence Rule."  (Id.)  As noted, it is well-established that the CISG does not recognize the parol evidence rule.  Weihai Textile, 2014 WL 1494327, at *6; accord Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 2011 WL 4494602, at *5 (S.D.N.Y. Sept. 28, 2011) ("the CISG does not merely lack a parol-evidence rule, it commands courts to consider extrinsic evidence that illuminates the parties' intent.") (Swain, J.) (emphasis in original); Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp., 2024 WL 5399245, at *11 (E.D.N.Y. Aug. 30, 2024) ("the CISG . . . does not contain a statute of frauds provision or a parol evidence rule.").

MISS did not cite to the CISG in its other filings to the Court, including the parties' joint letter in advance of the Initial Pretrial Conference and its pre-motion letter responding to Anhui's anticipated summary judgment motion.  (ECF 15, 21.)

Rienzi & Sons held that an importer waived application of the CISG when its pleadings did not cite the Convention but did invoke the statute of frauds, a defense available under New York law but not the CISG.  638 Fed. App'x at 90.  The Second Circuit concluded that the district court committed no error or abuse of discretion in finding that the importer consented to the use of New York law before its "untimely" invocation of the CISG in opposition to a summary judgment motion.  Id.; see also Ho Myung Moolsan, Co. v. Manitou Min. Water, Inc., 2010 WL 4892646, at *2 (S.D.N.Y. Dec. 2, 2010) (applying New York law when "plaintiff had relied exclusively on New York law, and not the CISG, until after the close of discovery.") (Holwell, J.).

MISS likewise waited until the summary judgment stage to invoke the CISG, and it relied on New York law when it cited the parol evidence rule as an affirmative defense. Accordingly, the Court concludes that MISS consented to the application of New York law and waived application of the CISG.  New York law governs the parties' dispute.

II.     THE JUNE 2023 TEXT MESSAGES ARE NOT
        PROPERLY CONSIDERED ON THIS MOTION.

The Federal Rules of Civil Procedure require the initial disclosure of "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Rule 26(a)(1)(A)(ii), Fed. R. Civ. P.  "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Rule 37(c)(1), Fed. R. Civ. P.

In its response to Anhui's motion, MISS annexes and relies upon a series of June 2023 text messages between Mendel Steiner of MISS and Leon Lee of Anhui.  (ECF 26-9.). Anhui states in reply that MISS did not produce these messages during discovery and first disclosed them to Anhui nearly two months after the discovery cut-off date, "just days" before MISS filed its opposition to summary judgment.  (ECF 32-3 at 9; Pl. 56.1 Resp. ¶ 22.)  Anhui states that it did not pursue discovery on these messages because MISS did not disclose its reliance on them, as Rule 26(a)(1)(A)(ii) requires.  (ECF 32-3 at 10.)

MISS has made no submission in response to Anhui's assertion that the June 2023 messages were not timely disclosed.  Based on Anhui's undisputed assertion that the June 2023

text messages at ECF 26-9 were not disclosed in discovery, they are not properly considered on this motion for summary judgment.  Rule 37(c)(1).

III.    ANHUI'S MOTION FOR SUMMARY JUDGMENT ON ITS BREACH OF
        CONTRACT CLAIM WILL BE GRANTED.

Anhui moves for summary judgment in its favor on the breach of contract claim, urging that MISS did not reject the garments within a reasonable time after their delivery. MISS's own submissions in opposition demonstrate that MISS had a reasonable opportunity to inspect the shipments but elected not to do so until it began to investigate why retail businesses to whom the garments were shipped for resale were not placing new orders. The record also demonstrates that MISS accepted Anhui's shipments by re-selling them to retailers.  No reasonable trier of fact could conclude that MISS did not accept the delivery of Anhui's goods and that it timely rejected those goods.  Anhui's summary judgment motion will be granted.

To succeed on a breach of contract claim, a plaintiff must prove the existence of the contract, plaintiff's performance, defendant's breach and resulting damages.  See, e.g., Markov v. Katt, 176 A.D.3d 401, 401-02 (1st Dep't 2019).  In New York, Article 2 of the Uniform Commercial Code ("UCC") governs claims for the sale of goods.  N.Y. U.C.C. § 2-102; Long Island Lighting Co. v. Imo Industries Inc., 6 F.3d 876, 887-88 (2d Cir. 1993).  Under the UCC, "[t]he buyer must pay at the contract rate for any goods accepted."  N.Y. U.C.C. § 2-607(1).  "When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price of goods accepted . . . ."  Id. § 2-709(1)(a).

MISS does not dispute that the parties entered into a series of contracts through their purchase orders and that the goods were timely delivered.  They disagree on whether MISS rejected the goods delivered by Anhui within a reasonable time after delivery.  "Acceptance of

goods occurs when the buyer after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity . . . ." Id. § 2-606(1).  Acceptance also occurs when the buyer "fails to make an effective rejection [under section 2-602(1)] but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them . . . ." Id. § 2-606(2).  "Rejection of goods must be within a reasonable time after their delivery or tender.  It is ineffective unless the buyer seasonably notifies the seller." Id. § 2-602(1).  "When the seller is required or authorized to send the goods to the buyer, the inspection may be after their arrival." Id. § 2-513(1).  "The buyer may exercise his right of inspection at any reasonable time or place and in any reasonable manner." Id. § 2-513 cmt. 3.

        "A tender or delivery of goods made pursuant to a contract of sale, even though wholly non-conforming, requires affirmative action by the buyer to avoid acceptance.  Under subsection (1), therefore, the buyer is given a reasonable time to notify the seller of his rejection, but without such seasonable notification his rejection is ineffective." Id. §2-602 cmt. 1.  "A buyer in possession of goods can not ordinarily decide whether to accept or reject them after the reasonable inspection opportunity has passed because at that point he has already accepted them . . . ." Seabury Construction Corp. v. Jeffrey Chain Corp., 2000 WL 1170109, at *2 n.2 (S.D.N.Y. Aug. 17, 2000) (Mukasey, J.) (emphasis in original).

        The summary judgment record reflects that MISS had a reasonable opportunity to inspect Anhui's shipments and did not reject the goods within a reasonable time after delivery. MISS explains that it did not inspect Anhui's shipments because the sample garments conformed to specifications, and that "[t]he product itself is closed because it is prepackaged per the specifications of MISS or the retailer . . . ." (Steiner Dec. ¶¶ 17-19, 21.)  In its memorandum of

law, MISS states that "[t]he defects were hidden and could not reasonably be found until the goods were being sold at retail." (ECF 27 at 5.)

But MISS's own evidence contradicts these assertions. Steiner acknowledges that the shipments were "inspected to verify quantity, colors and style. On their surface, all of Anhui's shipments appeared to conform." (Steiner Dec. ¶ 21.) This assertion by Steiner that MISS inspected shipments is evidence that MISS was capable of inspecting shipments without regard to packaging.

MISS accepted deliveries from Anhui on September 20, 2022, and, in 2023, on January 31, February 3, February 16, February 23, March 3, March 24, April 11, April 14, April 17 and April 21.[2] (ECF 23-12.) Steiner's email to Anhui of June 28, 2023 again demonstrated that MISS inspected shipments without regard to any packaging difficulties, stating that MISS "pulled out samples from our NJ warehouse inventory" and found items that were incorrectly sized. (ECF 26-10.) The items identified in that email were delivered to Anhui on February 23, 2023 and April 14, 2023, and ordered via purchase orders that required payment within either 21 or 30 days of receipt of goods. (ECF 23-12 at 6, 10; ECF 23-10, -11, -13.) Steiner's email of June 28 also demonstrates that MISS was capable of inspecting some shipments or portions of shipments but elected not inspect all of them. Similarly, Steiner's email of July 13, 2023 reported to Anhui that "we inspected" a "few lots" and found color defects in black-dyed products. (ECF 26-11.) MISS acknowledges that it opted not to inspect the shipments because the product samples conformed and Anhui "had a good track record . . . ." (Steiner Dec. ¶ 27.) MISS has not pointed to any prohibition on its right to open a package to inspect the conditions

---

[2] While additional deliveries were made on June 19 and July 18, 2023 (ECF 23-12), MISS does not point to evidence that it rejected these shipments.

of the garments, nor does it even describe the nature of the packaging that purportedly impeded its ability to inspect the garments.

The Steiner Declaration and emails submitted by MISS demonstrate that it had "a reasonable opportunity to inspect the goods." N.Y. U.C.C. § 2-606(1). A buyer's assertion that it "cannot be held to have accepted the goods because [it] did not inspect them, as [it] has a right to do under N.Y.U.C.C. § 2-513, is untenable." N. Bloom & Son (Antiques) Ltd. v. Skelly, 673 F. Supp. 1260, 1266 (S.D.N.Y. 1987) (Cedarbaum, J.). MISS was in possession of Anhui's shipments for months before it voiced concerns about the condition of any item. Because MISS had a reasonable opportunity to inspect the shipments and did not reject them within a reasonable time, no reasonable trier of fact could find in favor of MISS on Anhui's breach of contract claim.

MISS separately accepted Anhui's shipments because, after delivery, it resold the goods to retailers. "Acceptance of goods occurs when the buyer does any act inconsistent with the seller's ownership . . . ." N.Y. U.C.C. § 2-606(1)(c). "Under this Article 'acceptance' as applied to goods means that the buyer, pursuant to the contract, takes particular goods which have been appropriated to the contract as his own, whether or not he is obligated to do so, and whether he does so by words, action, or silence when it is time to speak." Id. cmt. 1. New York courts have repeatedly held that acceptance of goods is demonstrated when the goods are re-sold by the buyer. See ED & F Man Sugar Inc., etc. v. ZZY Distributors, Inc., 181 A.D.3d 463, 464 (1st Dep't 2020) (buyer's "acceptance of the sugar is shown by proof of its resale of the sugar received."); Gem Source Int'l, Ltd. v. Gem Works N.S. L.L.C., 258 A.D.2d 373, 374 (1st Dep't 1999) ("Defendant's resale of the diamonds was inconsistent with the consignor's 'ownership' of the goods, thus constituting acceptance under UCC 2-606(1)(c). The act of resale extinguished any objection defendant might have had to its receipt of the diamonds based upon inferior quality

. . . .") (citing <u>Sunkyong America v Beta Sound of Music Corp.</u>, 199 A.D.2d 100, 101 (1st Dep't 1993)); <u>Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.</u>, 746 F. Supp. 3d 69, 82 (E.D.N.Y. 2024) (buyer accepted cheese delivery when it "grated and mixed it with other cheese and sold it."). MISS's submissions demonstrate that it re-sold Anhui's shipments to its retailers. (Steiner Dec. ¶¶ 3 (stating that MISS "sells the wearing apparel to national retail chains . . . ."); 15 (describing MISS's need to "resale" items to retailers to "earn its profit."); 26 (referencing "lack of sales and consequent reorders" by retailers).) No reasonable trier of fact could find that MISS did not accept Anhui's shipments.

Moreover, with the exception of garments ordered in Purchase Order #M20152, MISS has not pointed to evidence that would permit a reasonable trier of fact to find that MISS communicated a rejection of Anhui's deliveries. "To effectively revoke acceptance, 'the buyer must unequivocally communicate his intent to the seller.'" <u>Rienzi & Sons</u>, 746 F. Supp. 3d at 82 (quoting <u>Ask Technologies, Inc. v. Cablescope, Inc.</u>, 2003 WL 22400201, at *3 (S.D.N.Y. Oct. 20, 2003)). A "mere complaint about the goods does not constitute a clear and unequivocal act of rejection. Moreover, defendant's use of the goods and failure to return same constituted an acceptance of the goods. Defendant's acceptance of the goods, even if the goods failed to conform to the contract, entitles plaintiff to recover the contract price." <u>Maggio Importato, Inc. v. Cimitron Inc.</u>, 189 A.D.2d 654, 654-55 (1st Dep't 1993) (internal citations omitted); <u>see also</u> <u>Ask Technologies</u>, 2003 WL 22400201, at *3 (maintaining possession of goods after indicating dissatisfaction shows "constructive acceptance of the goods").

No reasonable trier of fact could conclude that MISS's complaints to Anhui expressed an unequivocal rejection of goods. Steiner's email to Lee of June 28, 2023 described mis-styled items among MISS warehouse inventory and advised that "[w]e are still reviewing all

other styles but wanted to give you the heads up on our findings which is most likely the reason for the slow selling."  (ECF 26-10.)  The communication of a "heads up" was not an unequivocal communication that MISS was rejecting the goods shipped by Anhui.[3]

As to the items shipped in Purchase Order #M20152, a reasonable trier of fact could conclude that MISS unequivocally rejected them in Steiner's email of July 13, 2023, which stated that "from the few lots we inspected we saw there is a problem so we assume all Black have the same issue and we would like to return them to you," and referred to an attached spreadsheet listing #M20152.  (ECF 23-16, -17.)  While this email could be found to be a rejection, no reasonable trier of fact could find that it was made within a reasonable time after delivery.  N.Y. U.C.C. § 2-602(1).  The items in #M20152 were delivered on April 14, 2023.  (Lee Dec. ¶ 24; ECF 23-13 at 5; ECF 23-12 at 13.)  The purchase order for #M20152 had "Payment Terms" of "Net 15 Days."  (ECF 23-8 at 11, 12.)  Yet Steiner's email of July 13 was nearly three months following the April 14 receipt of the goods.  No reasonable fact finder could conclude that any excuse now made by MISS, including that April and May are the busiest months or that packaging inhibited inspection, rendered the delay until July 13 reasonable.  As the party opposing summary judgment, MISS does not point to evidence that would permit a reasonable trier of fact to conclude that it rejected the items in #M20152 within a reasonable time after delivery.

Accordingly, the Court concludes that Anhui's motion for summary judgment on its breach of contract claim will be granted.

---

[3] Even if the Court were to consider the text messages submitted by MISS at ECF 26-9, which it does not for the reasons previously explained, they do not communicate a rejection, and instead reference "many issues" and "issues" with a "[f]ew styles."

IV.    ANHUI'S CLAIMS FOR ACCOUNT STATED AND GOODS SOLD AND
       DELIVERED ARE DUPLICATIVE AND WILL BE DISMISSED.

Anhui's claims for account stated and goods sold and delivered are duplicative of

its claim for breach of contract, and will therefore be dismissed.

"An account stated is an agreement between parties, based upon their prior

transactions, with respect to the correctness of the account items and the specific balance due.

Although an account stated may be based on an express agreement between the parties as to the

amount due, an agreement may be implied where a defendant retains bills without objecting to

them within a reasonable period of time, or makes partial payment on the account.

The 'agreement' at the core of an account stated is independent of the underlying obligation

between the parties." Holtzman v. Griffith, 162 A.D.3d 874, 875-76 (2d Dep't 2018) (quotation

marks and internal citations omitted).

While a plaintiff typically may pursue a claim for both account stated and breach

of contract, it may not do so "simply as another means to attempt to collect under a disputed

contract." Martin H. Bauman Assoc. v H & M Intl. Transp., 171 A.D.2d 479, 485 (1st Dept

1991); see also Centrans Truck Lines, LLC v. Orient Express Container Co Ltd., 2023 WL

5390220, at *7 (S.D.N.Y. Aug. 21, 2023) (dismissing account stated claim that "is clearly

congruent with, and duplicative of, the claim for breach of contract . . . .") (Vyskocil, J.); Murray

Engineering P.C. v. Remke, 2018 WL 3773991, at *10 (S.D.N.Y. Aug. 9, 2018) ("A defendant

cannot be found liable on both an account stated claim and a breach of contract claim in

connection with the same allegations of a failure to pay monies owed.") (Failla, J.) (alterations

and quotation marks omitted).

Anhui's claim for account stated mirrors its breach of contract claim and seeks

damages for the same non-payment of goods delivered in the same shipments based on identical

evidence.  The account stated claim is duplicative of the breach of contract claim and will be dismissed.

The claim for goods sold and delivered will also be dismissed as duplicative of the breach of contract claim.  "To recover on a claim for goods sold and delivered, a plaintiff must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods."  H. Daya Int'l Co. v. Arazi, 348 F. Supp. 3d 304, 309 (S.D.N.Y. 2018) (Ramos, J.) (quotation marks omitted).  "The claim for goods sold and delivered is, in fact, a type of breach of contract claim."  Murray, 2018 WL 3773991, at *11.

A claim for goods sold and delivered is properly dismissed when it is duplicative of a breach of contract claim.  See Nedspice US Inc. v. Castella Imports, Inc., 2020 WL 6785335, at *4 (E.D.N.Y. Oct. 22, 2020) (dismissing goods sold and delivered claim when breach of contract claim "arises from the same facts – Defendant's failure to pay the amount owed on the invoices pursuant to the goods that were sold, and seeks the same damages") (internal citation omitted), R&R adopted, 2020 WL 6784178 (E.D.N.Y. Nov. 18, 2020); Murray, 2018 WL 3773991, at *11 (dismissing claim where "[p]laintiff's allegations in support of the claim for goods sold and delivered are identical to those giving rise to the breach of contract claim.").

Anhui's claim of goods sold and delivered contains the same elements and is supported by the same evidence as its breach of contract claim.  It will be dismissed as duplicative.

V.    ANHUI HAS PROVED THAT IT IS ENTITLED TO DAMAGES.

Anhui Joyful and Anhui Imports have submitted invoices reflecting the amounts owed by MISS, as well as MISS's payment history.  (ECF 23-13, -14, -4.)  Although MISS

- 18 -

contends that it is entitled to damages on its breach of contract counterclaim (ECF 27 at 15-16), and disputes its liability, it does not dispute the damages calculations of Anhui Joyful and Anhui Imports (Def. 56.1 Resp. ¶ 15).  The Court therefore concludes that Anhui Joyful is entitled to damages of $701,670.20 and that Anhui Imports is entitled to damages of $1,706,760.18.

MISS has asserted a counterclaim against Anhui Joyful and Anhui Imports for defective products sold and delivered, which is not the subject of any summary judgment motion. That counterclaim remains pending for adjudication.

CONCLUSION.

Plaintiffs' motion for summary judgment is GRANTED as to the breach of contract claim.  The claims for account stated and goods sold and delivered are dismissed as duplicative of the breach of contract claim.  The Clerk is respectfully directed to terminate the motion.  (ECF 23.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        March 21, 2025